# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 08-CV-3995 (JFB) (ETB)

———————————

Rocco Marini and Josephine Marini,

Plaintiffs,

versus

Harold Adamo, Jr., Lisa Adamo, The Bolton Group, Inc., and H. Edward Rare Coins & Collectibles, Inc.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
April 15, 2014

———————————

Joseph F. Bianco, District Judge:

Plaintiffs Rocco Marini ("Marini") and Josephine Marini ("Mrs. Marini") (collectively, "plaintiffs") brought this action against Harold Adamo, Jr. ("Adamo"), Lisa Adamo ("Mrs. Adamo"), The Bolton Group, Inc. ("Bolton"), and H. Edward Rare Coins & Collectibles, Inc. ("H. Edward") (collectively, "defendants"), asserting claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), as well as claims of fraud, breach of fiduciary duty, unjust enrichment, and money had and received under New York common law. After a bench trial, this Court rendered a verdict in plaintiffs' favor on all claims against Adamo, Bolton, and H. Edward. *See Marini v. Adamo*, -- F. Supp. 2d --, No. 08-CV-3995 (JFB)(ETB), 2014 WL 465036, at *1 (E.D.N.Y. Feb. 6, 2014).

The Court concluded that plaintiffs are entitled to the following relief: (a) Adamo, H. Edward, and Bolton are liable for violations of the Exchange Act; (b) Adamo, H. Edward, and Bolton are liable for $11,304,079 in compensatory damages for committing common law fraud; (c) Adamo is liable for $11,304,079 in compensatory damages for violations of the breach of fiduciary duty; and (d) Adamo, H. Edward, Bolton, are liable for $11,304,079 in compensatory damages for unjust enrichment and money had and received.

In the same Memorandum and Order as the verdict, the Court ordered supplemental briefing on two issues. The primary issue concerned Mrs. Adamo's liability for unjust enrichment and money had and received. Plaintiffs' theory at trial was based on the fact that Mrs. Adamo held joint bank accounts into which her husband deposited some fraud proceeds. Because holding a joint bank account is insufficient under New York law

1

to give rise to liability for unjust enrichment, *see Zell & Ettinger v. Berglas*, 690 N.Y.S.2d 721 (N.Y. App. Div. 1999), the Court requested supplemental briefing "as to any evidence in the record that Mrs. Adamo personally benefited from money in the joint account that can be traced to fraudulent proceeds from the coin transactions at issue in this case." *Marini*, 2014 WL 465036 at *40. Ultimately, plaintiffs have not met their burden, and the Court finds that Mrs. Adamo is not liable on the unjust enrichment and money had and received claims.

The Court also requested supplemental briefing on the damages for the Exchange Act claims. Counsel for defendants have since concluded that "there are no grounds to contest Plaintiffs' suggested damages on their securities claims." (Dkt. No. 246 at 2.) Having considered the evidence and arguments, the Court agrees with plaintiffs' calculation and awards $6,243,270 on the Exchange Act claims, based on transactions occurring after September 30, 2003. In addition, the Court corrects its previous award of post-judgment interest, to reflect only the federal rate. Thus, the remainder of this Memorandum and Order addresses the claims against Mrs. Adamo.

I. BACKGROUND

The Court's previous opinion provides a full description of the background and procedural history of this case, as well as the Court's findings of fact and conclusions of law after the bench trial. *See Marini v. Adamo*, -- F. Supp. 2d --, No. 08-CV-3995 (JFB)(ETB), 2014 WL 465036 (E.D.N.Y. Feb. 6, 2014).

For the purposes of this Memorandum and Order, it is sufficient to note the Court's earlier finding with respect to Mrs. Adamo:

> [T]here is no evidence, or even an allegation, that Mrs. Adamo was aware of any wrongful conduct by her husband. Moreover, although she was an officer of H. Edward and Bolton, there is no evidence or allegation that she had any personal involvement in coin transactions at issue in this case.

*Id.* at *40.

Accordingly, the Court concluded that Mrs. Adamo's joint bank accounts with her husband were insufficient to hold her liable for unjust enrichment or money had and received. The Court directed the parties that "if it could be proven that she personally benefitted from the specific funds in the joint account that represented the fraudulent proceeds from her husband's coin transactions with plaintiffs, equity and good conscience would require restitution by Mrs. Adamo for that particular amount of money." *Id.*

On February 24, 2014, the Court established a briefing schedule for the parties to address whether the evidence already in the record proved Mrs. Adamo's liability. On March 1, 2014, plaintiffs filed a brief arguing that Mrs. Adamo was liable because she spent freely from the joint accounts and from her husband's business earnings, both of which were pools of funds that included proceeds of the Marini fraud. On April 1, 2014, defendants responded in opposition that plaintiffs had not traced Mrs. Adamo's spending to the Marini fraud. Defendants argued that Mrs. Adamo's lifestyle could have been funded by the proceeds of Adamo's other business transactions, both before and during the Marini fraud. On April 8, 2014, plaintiff replied, arguing that Adamo's other business transactions were not profitable, and that he was insolvent

2

before he defrauded the Marinis, suggesting that the Marini fraud provided the only income used to support Mrs. Adamo.

## II. BURDEN OF PROOF

Plaintiffs must prove the unjust enrichment and money had and received claims against Mrs. Adamo by a preponderance of the evidence. *See Newman v. Herbst*, No. 09-CV-4313, 2011 WL 684165, at *6 (E.D.N.Y. Feb. 15, 2011) (unjust enrichment); *Lum v. New Century Mortg. Corp.*, 800 N.Y.S.2d 408 (N.Y. App. Div. 2005) (stating that unjust enrichment and money had and received claims are "quasi-contract" claims); *see also Mercury Partners LLC v. Pac. Med. Bldgs., L.P.*, No. 02 Civ. 6005, 2007 WL 2197830, at *8 (S.D.N.Y. July 31, 2007) ("Under New York law, the burden of proof in an action for breach of contract is on the plaintiff to prove the elements of its complaint by a preponderance of the evidence." (citations omitted)).

## III. DISCUSSION

The Court has concluded, and the parties do not dispute, that the question whether Mrs. Adamo benefitted from the Marini fraud is the same for both the unjust enrichment and money had and received claims. *Compare Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant[ ] to make restitution." (internal quotation marks and citations omitted)), *with Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) ("The essential elements in a claim for money had and received under New York law are that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money."). Thus, the following discussion focuses on the unjust enrichment claim, but its conclusion applies to both claims.

When considering an unjust enrichment claim, a court's "essential inquiry" is one of "equity and good conscience." *Paramount Film Distrib. Corp. v. State*, 30 N.Y.2d 415, 421 (1972). Though these are "broad considerations," *id*., the New York courts have applied them consistently in cases involving "gratuitous donee[s]" or "[i]nnocent parties." *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978). In those cases, New York courts have required proof that the innocent party received a "specific and direct benefit" from the property sought to be recovered, not an "indirect benefit." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). The direct-indirect distinction is consistent with a separate line of unjust enrichment cases in New York holding that a plaintiff's relationship with the defendant cannot be "too attenuated." *See Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 216 (2007) (concluding that "the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support" an unjust enrichment claim). Both sets of cases demonstrate that courts are cautious about extending unjust enrichment liability beyond the principals to the transaction, and that when they do so, it is possible as a matter of equity to draw a clear line between the plaintiff's loss and the defendant's gain or misconduct. *See Paramount*, 30 N.Y.2d at 421 ("Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with

the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent.").

Sufficient proof that an innocent party specifically and directly benefitted requires more than a showing that the innocent party may have had access to, or some awareness of, the funds in question. "[O]n a theory of unjust enrichment, there must first be enrichment." *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982); *see also Jaffe v. Capital One Bank*, (S.D.N.Y. Mar. 1, 2010) (noting "[t]he absence of an allegation that Defendants *tangibly* benefitted at Jaffe's expense") (emphasis added). Thus, in *Zell & Ettinger v. Berglas*, the Second Department held that a husband was not unjustly enriched simply because he had access to his wife's misappropriated funds in the couple's joint bank account. 690 N.Y.S.2d 721 (N.Y. App. Div. 1999). Likewise, in *Kaye*, the Second Circuit reversed an unjust enrichment verdict against the wife of a lawyer, where the lawyer borrowed $50,000 from the plaintiff and spent most of it on business expenses. 202 F.3d at 616. Because "[the plaintiff] offered no evidence demonstrating that [the wife] actually received any portion of the loan, nor did she show that the loan relieved [the wife] of any financial obligations for which she otherwise would have been responsible," there was insufficient proof that the wife benefitted from the loan. *Id.* The Second Circuit reached this conclusion despite an alleged statement by the wife that her daughter would not have been able to continue in college without the loan. *Id*. Even if that statement was true, the court considered that benefit to be indirect. *Id*. In other words, plaintiff did not demonstrate that the loan directly enriched the wife, or even affected her at all.

Although plaintiffs cite two cases where, unlike *Kaye*, a defendant was found to be unjustly enriched by a benefit also realized by a relative, those cases are not to the contrary. For example, in *Blue Cross of Cent. N.Y. v. Wheeler*, the Fourth Department noted that the defendant may have benefitted from Blue Cross's payment for his wife's medical services under *the defendant's* insurance policy, since those payments "saved [an] expense" he otherwise would have had to pay. 461 N.Y.S.2d 624 (N.Y. App. Div. 1983). Thus, there was a clear benefit to *both* the defendant and the wife. Furthermore, there was no question in *Wheeler* that the defendant's benefit was directly tied to the funds spent by Blue Cross—those funds went from Blue Cross to the hospital, but in effect, the defendant was spending them (instead of his own funds) for the treatment of his wife. *Id.*; *see also Nakamura v. Fujii*, 677 N.Y.S.2d 113 (N.Y. App. Div. 1998) (finding claim for unjust enrichment stated where plaintiff alleged he sent tuition for defendants' children directly to school); *accord Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 79 (2d Cir. 1986) ("To recover on a theory of unjust enrichment under New York law, a party must establish not only that there was enrichment, but that the enrichment was *at the plaintiff's expense*.") (emphasis added).

Here, in contrast, the evidence does not establish a direct link between plaintiffs' losses and Mrs. Adamo's spending, or any benefit to Mrs. Adamo. Thus, although Mrs. Adamo may have had access to the fraud proceeds, like in *Zell*, it is unclear that they enriched her. Furthermore, Mrs. Adamo was not enriched simply because her husband was; unlike in *Wheeler*, plaintiffs have not shown a separate benefit to her. Although they argue that Mrs. Adamo "saved expense" like the defendant in *Wheeler*, plaintiffs have not proven that there was a single source of funds in this case, equivalent to Blue Cross's payments in *Wheeler*. Instead, it appears that

4

Mrs. Adamo had a broader pool of non-Marini funds available to her, and thus plaintiffs have not shown that she funded her lifestyle "at plaintiff's expense." *Universal City Studios*, 797 F.2d at 79.

Plaintiffs question how direct the link must be between their loss and Mrs. Adamo's gain: in particular, they argue that they are not required to trace their "specific" funds to Mrs. Adamo, meaning that they do not have to show that she spent the same money the Marinis paid to Mr. Adamo. The Court agrees that such a showing is not required, but plaintiffs are required to show that Mrs. Adamo specifically and directly benefitted from the fraud, so evidence that Mrs. Adamo spent the Marinis' funds would have been a strong form of proof. In the absence of such evidence, plaintiffs have attempted to prove Mrs. Adamo's benefit circumstantially, arguing that, absent the fraud, she would have had no other money to spend.

In the Court's view, plaintiffs' circumstantial evidence to prove this point is incomplete and insufficient to meet their burden. To begin with, it is unclear how much money the Adamos had when the Marini fraud started, so there is no baseline figure from which to measure any possible benefit to Mrs. Adamo from the fraud. Defendants cite numerous portions of the record suggesting that the Adamos were wealthy before the Marini fraud (Def. Mem. at 6-7), and although plaintiffs argue that their wealth was illusory (a front for the fraud), the evidence supporting this point is insufficient. Plaintiffs cite testimony that Adamo bounced checks in the months before the fraud, but it is unclear which accounts those checks were drawn on. Given the number of accounts available to the Adamos and the high cash flow among them, the fact that Adamo bounced checks from certain accounts does not prove that his overall financial picture was as bleak as plaintiffs contend.

The evidence of the Adamos' overall financial picture during the time period of the fraud is just as unclear as the evidence of their finances before it began, and that lack of clarity is fatal to plaintiffs' attempt to prove unjust enrichment circumstantially. Simply put, Adamo appears to have had ample income from other sources besides the Marini fraud, and thus plaintiffs have not proven that it was the Marini fraud that enriched Mrs. Adamo. Plaintiffs did not introduce the couple's complete bank records at trial, and the records of the joint bank accounts on which plaintiffs rely are incomplete. They show certain months of certain years in the broader period from 2002 to 2007, with significant gaps in the records. (*See, e.g.*, PX 41 at DEF 728-29 (record gap between January and October 2003); *id.* at DEF 792-93 (record gap from April to August 2005).) As a result, the Court cannot conclude that there were no funds available to Mrs. Adamo besides the fraud proceeds.

The gaps in the bank records are significant in light of the relatively small examples of Mrs. Adamo's spending cited by plaintiffs. These examples, like the bank records themselves, provide only a partial view of her overall financial picture. For example, plaintiffs point to evidence that Mrs. Adamo spent cash on lunches and yoga classes, and spent between $1,500 and $2,000 at multiple boutique sales. No dates are identified for any of these transactions, making it impossible to draw a connection between them and the Marini fraud. In addition, plaintiffs rely on checks that Mrs. Adamo wrote for various minor expenses totaling $7,356, but defendants compared the checks to the bank records and showed that the checks were not drawn at times when funds from the Marinis had recently entered

5

the joint accounts. (Def. Mem. at 11-12 (citing PX 41).) Defendants also made a similar showing with respect to plaintiffs' contention that Adamo paid a $50,000 bill for the couple's vacation. The month before that vacation occurred, Adamo's business account received more than $500,000 in deposits, and plaintiffs have not traced any of those deposits to the Marinis. (*Id*. at 9 (citing PX 41 at DEF 900; PX 9).) Thus, it is entirely plausible that these expenses could have been funded by Adamo's other business.

Although plaintiffs attempt to foreclose that possibility by arguing that Adamo was not successful in his non-Marini business, the evidence shows that there was enough of that business at any one time to fund Ms. Adamo's living expenses. Plaintiffs concede that Adamo may have earned more than $400,000 in his transactions with third-party coin sellers during the period of the Marini fraud, which would have covered much of the spending attributed to Mrs. Adamo. (Pl. Reply at 4.) Plaintiffs also concede that Adamo sold coins to three other individuals, and that he received at least $195,000 in one sale and $225,000 in another. (*Id.* at 3.) Regardless of the ultimate profitability of these transactions and Adamo's steady business with professional coin dealers, the fact remains that Adamo's non-Marini activities generated a high amount of cash flow. Certain accounts, including the joint accounts, averaged balances in the hundreds of thousands and even millions of dollars at various times, and plaintiffs have not attempted to trace all of these funds to the Marini fraud. (*See, e.g.*, PX 41 at DEF 693 (average daily balance of $1,361,949.00 in joint money market account in May-June 2003); at 388 (average monthly balance of $881,038.09 in joint savings account in October-November 2004); at 398 (ending balance of $603,563.62 in joint money market in May 2007).) Thus, at any given time, Mrs. Adamo may have been spending funds attributable to non-Marini business.[1]

The Court's focus on the fact that Mrs. Adamo had non-Marini funds available to her *at the time* of her alleged expenditures stems from the requirement described in *Kaye* that an innocent party's enrichment must be "specific and direct." 202 F.3d at 616. The plain meaning of those terms suggests that the benefit must have some degree of immediacy, while an indirect benefit would take time to realize. Plaintiffs describe an indirect benefit when they look back over the whole five-year period of the Marini fraud and argue that, on balance, Adamo lost money from his other business while profiting from the Marinis. As the Court has discussed, plaintiffs have not sufficiently proven the extent of Adamo's profits and losses, but even if they had, the benefit to Mrs. Adamo would be indirect. At the time that she was actually spending her husband's money, the evidence shows that it was coming from multiple sources, and plaintiffs have not isolated the enriching effect, if any, of the Marini fraud. Defendants, on the other hand, have shown that the Marinis did not make payments to Adamo close in time to the examples of Mrs. Adamo's spending cited by plaintiffs, and thus the Court does not conclude that her spending reflects a specific and direct benefit from the Marini fraud.

In reaching this conclusion, the Court notes that the facts of *Kaye* itself involved an even more immediate and traceable benefit, but the Second Circuit still overturned the

---

[1] The fact that the Adamos enjoyed a consistently large cash flow further clouds the issue of the source of Mrs. Adamo's living expenses because, as noted above, plaintiffs did not attempt to date most instances they cite of Mrs. Adamo's spending.

unjust enrichment verdict against the lawyer's wife. There, testimony suggested that the lawyer's wife knew of the loan and admitted that it helped her daughter remain in college—admissions which are absent from this case. *Id.* ("Laura 'acknowledged that the money was lent to the family' and told Kaye that 'but for [Kaye's] loan, her daughter would not have been able to continue at Duke University.'"). Still, the Second Circuit considered the benefit to the lawyer's wife to be indirect. The most that the evidence of the wife's admissions showed was that the family's overall financial picture might have been improved, not that the loan directly funded a needed expense. *Id.*; *cf. Nakamura*, 677 N.Y.S.2d at 113 (finding sufficient allegation that plaintiff directly paid plaintiff's children's tuition). At least one other court in this circuit, following *Kaye*, has also rejected a theory of unjust enrichment based on a defendant's generally improved financial situation. *See M+J Savitt, Inc. v. Savitt*, No. 08 Civ. 8535(DLC), 2009 WL 691278, at *10 (S.D.N.Y. Mar. 17, 2009) (finding that plaintiff's loan to corporation was indirect benefit to co-owner, where co-owner was never obligated to make similar loan); *cf. Wheeler*, 461 N.Y.S.2d 624 (noting that the defendant may have been obligated to make the payment made by Blue Cross). Similarly, in the instant case, the Court concludes that plaintiffs have not shown that the fraud against them provided any specific and direct benefit to Mrs. Adamo, and failed to produce sufficient evidence to meet their burden on the unjust enrichment claim or the money had and received claim.

Although plaintiffs did not discuss *Kaye* in their brief, they have emphasized the fact that the Marini fraud proceeds reached the accounts to which Mrs. Adamo had access, which is a factual distinction from *Kaye*. Plaintiffs also cite the principle that an unjustly enriched defendant need not spend the funds in question, but instead may be liable simply for "hold[ing] property." *Simonds*, 45 N.Y.2d at 242. As the above cases illustrate, however, who actually "held" a plaintiff's property is a more nuanced question in cases involving innocent parties. The "essential inquiry" is not the factual question whether the funds came within the innocent party's grasp, but instead is one of "equity and good conscience," which involves consideration of whether "there has been otherwise a change of position by the defendant, and whether the defendant's conduct was tortious or fraudulent." *Paramount*, 30 N.Y.2d at 421.

In *Zell*, for example, even though the misappropriated funds were in the husband's joint bank account, the Second Department noted that there was no evidence he "exercise[d] dominion or control over the misappropriated funds," or that the funds were "traceable" to him. 690 N.Y.S.2d at 721-22. Put differently, there was no evidence of a concrete connection between any gain by the husband and the loss by the plaintiff. Thus, although the Court agrees with plaintiffs that the question is not whether Mrs. Adamo spent or saved the funds, that point has limited relevance for the question at issue here: whether plaintiffs have established or "traced" a sufficient link between the funds they lost, and a specific and direct benefit to Mrs. Adamo. Having reviewed the evidence, the Court concludes that plaintiffs have not carried their burden.

IV. CONCLUSION

For the foregoing reasons, plaintiffs have not carried their burden to prove, by a preponderance of the evidence, the unjust enrichment and money had and received claims against Mrs. Adamo.

7

With respect to the damages question on the Exchange Act claims, having considered the evidence and arguments, plaintiffs have met their burden of proving $6,243,270 in compensatory damages, reflecting transactions occurring after September 30, 2003, and thus are entitled to that amount on those claims.[2]

Finally, defendants advised the Court that the previous Memorandum and Order included an award of post-judgment interest of 9% on the state-law claims, while the award for the Exchange Act claims reflected the federal rate established under 28 U.S.C. § 1961. *See Marini*, 2014 WL 465036 at *45. Defendants correctly observed that both sets of claims should reflect the federal rate for post-judgment interest, and plaintiffs have conceded the point. *See Cappiello v. ICD Pubs., Inc.*, 720 F.3d 109, 112 (2d Cir. 2013) ("[F]ederal district courts must apply the federal rate of post-judgment interest to judgments rendered in diversity actions, even when those judgments have been docketed in state court, and that such application does not violate the Constitution.")

Therefore, the Clerk of the Court shall enter judgment as follows and close the case:

(1) The Court finds in plaintiffs' favor on all claims against Harold Adamo, H. Edward Rare Coins & Collectibles, Inc., and The Bolton Group, Inc., and awards $11,304,079 in compensatory damages.

(2) Plaintiffs are entitled to pre-judgment interest calculated at a rate of 9% from January 1, 2005 to the date of the judgment on the state law claims, and 9% from April 5, 2006 to the date of the judgment on the Exchange Act claim. Plaintiffs are also entitled to post-judgment interest on all claims, to be calculated pursuant to the federal rate set forth in 28 U.S.C. § 1961.

(3) The Court finds in Lisa Adamo's favor on the unjust enrichment and money had and received claims.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 15, 2014
Central Islip, NY

\* \* \*

Plaintiffs are represented by Michael H. Schaalman, Quarles & Brady LLP, 411 E. Wisconsin Ave, Milwaukee, WI 53202, Scott A. Moss and Marianna Moss, Moss Law Practice, 8053 East 24th Drive, Denver, CO 80238, and Paul A. Brancato, 106-43 157th Street, Jamaica, NY 11433. Defendants are represented by Richard Dolan, Robert Begleiter, and Andrew Harris, Schlam Stone & Dolan LLP, 26 Broadway, New York, NY 10004, as well as Bruce A. Barket and Donna Aldea, Barket Marion Epstein & Kearon, LLP, 666 Old Country Road, Garden City, NY 11530.

---

[2] Obviously, those compensatory damages are subsumed within the $11,304,079 in compensatory damages that the Court awarded on the other claims.